MASSACHUSETTS BANK *vs.* SARAH H. OLIVER, Executrix.

H. O. the indorser of a note being dead, a notice of dishonor sent by mail, directed
"to the estate of H. O. deceased," is not sufficient to charge his executor, there
being no proof that such notice was received by the executor, and the holder
not having used due diligence to learn the executor's name.

ASSUMPSIT against the indorser of a promissory note, dated
April 27, 1847, for $839,45, payable in six months after date,
to the order of Henry J. Oliver, the defendant's testator.

The only defence was the want of proper notice to the
indorser of non-payment by the maker. Henry J. Oliver, the
indorser, died September 5, 1847, fifty-four days before the
maturity of the note, and the defendant was qualified as
executrix, by the judge of probate, October 23, 1847, and
notice of said appointment was duly published by the defend-
ant in the " Boston Daily Advertiser," October 26, November
2d, and 9th, 1847. The plaintiff bank was situated in Boston,
and the Advertiser was at the time regularly taken at the
bank.

The president of the plaintiff bank was informed before the
23d day of October, that the indorser, Henry H. Oliver, was
dead, and that the defendant was named as executrix in his
will, but did not know before the note fell due, that she had
been qualified by the court of probate as such executrix. On
the 29th of October, 1847, the day of the maturity of the
note, the note was handed to a notary public, to protest and
to send notice to the indorser ; and he then inquired who was
the representative of Henry J. Oliver, deceased, and was told
by the messenger of the bank, who brought him the note,
that he did not know. The notary made no other inquiries.
He then put a sealed notice of dishonor into the post-office at
Boston, directed to " The estate of Henry J. Oliver, Esq.
deceased, Roxbury, Mass." The defendant's testator lived in
said Roxbury, and the postmaster of that place, it was ad-
mitted, would testify as follows: " That during Henry J.
Oliver's life, letters addressed to him and to the members of
his family, were frequently received at the office, and deliv-

47*

ered on being called for. After his decease, letters addressed to Mrs. Oliver and other members of the family of the deceased, and letters addressed either to the estate of Henry J. Oliver, or "to the heirs of Henry J. Oliver," the witness is not certain which, came to the office. All such letters were kept with letters addressed to other persons, whose names began with N. and O., and were delivered, as witness supposes, on being called for. The family had no box. A letter addressed "To the estate of Henry J. Oliver," would have been so kept, and handed to any person calling for letters for any Oliver, except William M. Oliver. Witness cannot state that all such letters were delivered; but persons were in the habit of calling for the Oliver letters, and he supposes that some of these persons were members of the Oliver family. Ladies dressed in black have so called, subsequent to the decease of Henry J. Oliver. He cannot state whether or not any of the letters above mentioned came to the office in October, 1847. Witness does not think that the family came regularly to the post-office, but they came as often as once or twice a week, and asked for the Oliver letters. He has known persons, who called for the Oliver letters, subsequent to Mr. Oliver's decease, to refuse letters, after looking at the outside. Witness is not personally acquainted with Mrs. Oliver. He knows one of the sons of Mr. and Mrs. Oliver, but does not know his christian name."

Upon the foregoing facts and testimony, it was agreed by the parties that any question or inference of fact, which a jury would be justified to find, may be decided by the court, and judgment may be entered for either party, as shall be according to law.

*W. Sohier*, for the plaintiffs.

1. The facts show a legal notice to the defendant of the dishonor of the note in suit. Notice to an indorser, properly directed and put into the post-office, is conclusively presumed to reach him. *Shed* v. *Brett*, 1 Pick. 401. Even where not properly addressed, evidence is always admissible to show that it actually reached him. *Cayuga Bank* v. *Bennett*, 5 Hill, 236, Cowen, J.; *Walter* v. *Haynes*, Ry. & M. 149. What is

a proper address and direction, is a question of law for the court, which will be decided upon the circumstances of each case. Thus, where the drawer of a bill, dated at Manchester, wrote no special address on the bill, a notice directed to " Mr. Moors, Manchester," was held sufficient. *Mann* v. *Moors,* Ry. & M. 249. And see *Clarke* v. *Sharpe,* 3 Mees. & Welsb. 166.

In this case, the defendant, being widow of the indorser, as well as executrix of his will, and living in his house, a notice addressed to him, would probably have been sufficient. To his estate, is clearly so. The executrix represents the estate ; she, and she alone, can be understood by that term. Suppose, then, the notice had been left at the house by the notary, it would have been notice to her. Being put into the post-office, and addressed to the town where the testator had lived, and where she lives, the presumption is that she received it. " To the legal representatives " of a deceased person, has been held sufficient, though sent to the place of his late residence, and where the executors did not reside. *Pillow* v. *Hardeman,* 3 Humph. 538. See also *Planters' Bank* v. *White,* 2 Humph. 112; *Stewart* v. *Eden's Executor,* 2 Caines, 121. To send a notice to Roxbury, the post-office was the proper mode. *Bank of Columbia* v. *Lawrence,* 1 Pet. 582; *Hartford Bank* v. *Stedman,* 3 Conn. 489 ; *Ransom* v. *Mack,* 2 Hill, (N. Y.) 587.

2. We were not bound to notify the executrix in this case ; notice to " Henry J. Oliver," would have been sufficient. Before the probate of a will, an executor cannot be entitled to notice. For *non constat* that he will be appointed, or will act; executors may do many acts before probate, because it is in their election to accept or renounce, and they may make that election by acting. But in suing them before probate, plaintiff must show that the election has been made. 2 Steph. N. P. 1834. See on this point, *Oriental Bank* v. *Blake,* 22 Pick. 206. Plaintiffs in this case had no knowledge of the defendant's appointment as executrix. Nor have they shown a want of diligence in not learning it. It appears that notice of the appointment had been published once, in a paper taken

at the bank. But this is only evidence, to go to the jury of actual notice. Story on Part. § 161; *Godfrey* v. *Macauley*, Peake's R. 154, note *a*. It is a presumption of fact, and disputable; and is rebutted in this case, by the express statement, that the plaintiffs did not actually know of the appointment. In this case the notice had been published but once, and but a few days before the maturity of the note, and in a Boston paper, where the plaintiffs would not expect to find it; the testator having been a resident of Roxbury. Story on Part. § 161. These facts distinguish the case from *Oriental Bank* v. *Blake*, 22 Pick. 206, where the appointment had been made three months before the maturity of the note, and duly notified, (i. e. published for three successive weeks, in the county where the deceased resided,) so that it might well be presumed to have become a matter of public notoriety, and that the holder might easily have ascertained the facts. Of course the publication in Boston would tend to give greater notoriety to the facts, but it does not appear that any notice at all had been published in Norfolk, before the maturity of this note. Upon the point of diligence, see *Harris* v *Robinson*, 4 How. 336; *Lambert* v. *Ghiselin*, 9 How. 552.

*W. R. P. Washburn*, for the defendant.

METCALF, J. When the indorser of a note dies before its maturity, it is necessary, in order to charge his estate, that notice of non-payment should be given to his executor or administrator, if there be any known to the holder, or who might be known to him, on his using due diligence to ascertain. *Oriental Bank* v. *Blake*, 22 Pick. 206; *Merchants' Bank* v. *Birch*, 17 Johns. 25; *Cayuga County Bank* v. *Bennett*, 5 Hill, 236. And when the holder and the executor or administrator live in different towns, a notice, properly directed to the latter, and put into the post-office, is sufficient. *Shed* v. *Brett*, 1 Pick. 401.

The notice, in this case, was directed "to the Estate of Henry J. Oliver, deceased," and was put into the post-office at Boston. It is insisted for the plaintiffs, that this was sufficient. And their counsel has cited a decision of the Supreme Court of Tennessee, *Pillow* v. *Hardeman*, 3 Humph.

538, that notice, directed " to the legal representative" of a deceased indorser, is a good notice. The ground of that decision was, that the words " legal representative," in their ordinary sense, are synonymous with executor or administrator. *A fortiori*, notice directed " to the executor or administrator," without naming him, would have been held sufficient. But either of such notices would be directed to an existing person, though not by name, yet by clear description; and that person would know that it was addressed to him, as well as he would know it if his name were used. In the present case, the notice was directed, not to any person, either by name or description, but "to the estate" of the defendant's testator. This direction was quite as applicable to the testator's heirs at law as to his executrix; and there is no reason why she, rather than they, should take it from the post-office, or be presumed to have received it.

Whether this notice would be held sufficient, if it had appeared that the defendant received it, we need not inquire. For the statement of the postmaster at Roxbury does not warrant us to infer, with any confidence, that she did receive it, and thereupon to charge her with actual notice.

But as the law does not require that the holder of an indorsed note should have knowledge beyond his means of obtaining it, he is excused from giving notice to the executor or administrator of the indorser, when he neither knows, nor can, by reasonable diligence know, whether there is one, or who he is, or where he resides. The use of due diligence to ascertain is all that is required. Was such diligence used in this case? We are all of opinion that it was not. The indorser died more than seven weeks before the note was payable. The president of the bank had information, a week at least before the note was payable, that the defendant was the executrix named in the indorser's will. The plaintiffs took the newspaper in which the defendant had given notice, three days before the note fell due, that she had been appointed executrix of the will, and had taken upon herself that trust. And though it is agreed by the parties that the president of the bank had no knowledge, before the day when the note

was payable, of the defendant's appointment as executrix, by the judge of probate; and though we were to assume, (without proof,) that no other of the officers of the bank, before that day, saw the defendant's notice in the newspaper, nor actually knew who the executrix was; yet the facts, which the parties have agreed on, show that certain knowledge might have been obtained in a very few minutes, if any proper inquiry had been made by any of those officers, or by the notary into whose hands the note was put for protest and notice.

*Judgment for the defendant.*